on behalf of the United States, I would request to reserve three minutes of my time for rebuttal. You may do so. Thank you, Your Honor. This Court should reverse the decision of the District Court. The District Court's decision is not in line with the Supreme Court decision in Zabudas. It's not in line with this Court's decision in Doan. And it sets a dangerous precedent. That precedent would be to allow a detained alien to skip the administrative procedures that have been set out by the agency, that have been approved by the courts, and go straight to a habeas action. Counsel, I have a threshold question. Why isn't this case moot? And the threshold answer to that, Your Honor, is that because it is capable of repetition. Certainly both of the aliens – Well, specifically in this case, the writ was granted and the prisoner has been released, or at least the alien has been released. Isn't that correct? It is in both cases, Your Honor. And the only issue which you want to raise now is after the fact. The person has already been released. What possible remedy can you get at this point? Your Honor, there's, I think, a twofold answer to that question. First, yes, you are correct that both the aliens, Mr. Tran and Mr. Tan, have been released. But there's a question of what precedent has been set in the District Court. And the relief that we would seek is simply to vacate the decision of the District Court and remand this case. As both aliens have, in fact – But if we were to remand the case, the aliens are free. You have no jurisdiction over them anymore, do you? We have a jurisdiction over them, Your Honor, as they're still being tracked by the government in the event that repatriation becomes possible. The likelihood is if this case were to vacate the decision of District Court and remand, it's not like – Do you have to re-arrest them? I don't think that's what I was trying to say, and I started to say it the wrong way. I don't think that's likely to happen. I think what's likely to happen is the United States attorney, the public defender, would come into court. The judge would say, is there anything else in this case? The answer would be no, because there's no information that other than the bond issue that there's been any other problems with the reporting requirements or any of the other conditions of release. But there is the precedent that the District Court's decision set. The District Court's decision said specifically, in both cases, you don't need to exhaust your administrative remedies. Let me ask you a question on follow-up from Judge O'Scanlan. When they were ordered released, did the government seek a stay? I don't believe so, Your Honor. And no request for a stay from the District Court? Correct. And no stay request to this Court? Correct, Your Honor. So your idea is that we would send this back, and the two lawyers would come in, and they'd be asked, is there anything more? And they would say no. And then what would Judge Wagner do? I assume we'd close the case, Your Honor, because there's two issues there, two questions there. One is the actual bond amount, and are we going to let these individuals out? They have been let out. You're correct, Your Honor. There was no stay sought to keep them locked up pending appeal. But the question then is, what's going to happen in the next case when ---- Well, I would hope in the next case the government would seek a stay and, if refused at the District Court, would come to the Court of Appeals and ask for a stay so the issue remains live. Presumably that lesson would be learned for the future, Your Honor. But it's also a question of what's going to happen when the next alien or the next counsel sees what this Court does. And the danger of the District Court's decision in this case is that without requiring ---- Sees what this Court does. If someone picks up a piece of paper and reads the line, the defendants having been released from any restraint and are at liberty, the Court determines this case is moot. Signed, O. Scanlon, Siler, Hawkins. What are they going to get from that? The danger, Your Honor, that the government would suggest is that the next time this happens, that the INS or, I'm sorry, DHS now says, here's your bond amount. You have the right to request reconsideration. Here's how you do it. You'd like an advisory opinion saying you've got to exhaust your administrative requirements and that the INS can set forth reasonable bond requirements or something like that. I'm hesitant to say an advisory opinion, but in that the District Court's order in this case specifically said, orders in both cases said, you do not have to exhaust your administrative remedies. That's the key, I think, to the answer to the original question of why is this case not moot. Because what is going to happen when the next alien who is in detention gets that similar letter that says you're going to get a $5,000 bond? I would hope that the government would say to a district judge who was inclined to do that, Your Honor, with all respect, there's no authority to do that. And if you do it, we're going to ask for a stay. And if you refuse the stay, we're going to the Court of Appeals because this ain't right. But you didn't do that here. That's correct, Your Honor. So you want an opinion that the opening line would be something like even though this the horse is out of the barn, this case is over, it's done, the only thing left to do is send it back to district court and have them stamp the file closed. We thought while we were at it we would write a few of our thoughts about what might happen in the future. Is that what you want us to do? I don't think I could ask for that much, Your Honor. But I think the question is what – I think it does come into what is the – what are the aliens, what are the counsel, and what is the guidance that this Court could set? I think my guidance, I can't speak for my colleagues, would be to lock the door before the horses leave the barn. Message received, Your Honor. The point the government is simply making is the courts have said conditional release is okay. The courts have said that bond is an okay condition of release. That's what the agency did in this case. In fact, they went further and they said not only are we going to set bond, but we're not going to simply say here's your bond, take it or leave it. If you want to ask for reconsideration because you can't afford, in your opinion, to make bond, you can ask for reconsideration. And in this – in both cases, the aliens were put on notice of that. They chose not to seek reconsideration. In fact, particularly in Mr. Tran's case, the government came back and said, look, we told them here's how you seek reconsideration. They haven't done it. Therefore, we're sticking with what we've got. Well, arguably one interpretation of what happened at the district court was the bond issue was squarely presented and the district judge found that these aliens could not afford the bond  I think it's certainly one possibility, Your Honor. Weighing against that conclusion are a couple of things. First, the way that the decisions, particularly the magistrate judge's recommendations, finding the recommendations were worded was because they haven't paid, because each individual hasn't paid, therefore he can't. And the government would suggest that that's putting the cart before the horse. If they could not pay, they could make a demonstration of that. Then the court could find, okay, you've shown us that you can't pay, therefore we will find you can't pay. But what the court did was to put it in the opposite order. And essentially what they did was trying to think of an analogy. As I came into the city, I saw the baseball stadium. Just because the Giants are up 6-0 in the seventh inning, the game's not over. You still have to play the rest of the game. You have to complete the record. And the problem with the district court's decision in this case is that it deprives this court of a complete record on review and, in a sense, deprived itself of a more complete record. The conclusions, the ultimate conclusions, may have been the same. Mr. Tran, Mr. Than, may not, in fact, have been able to afford bond. But when the INS said, please, if you want to seek reconsideration, come back to us, that's how you complete the record. And that's how you can say, for example, not only can't I afford to pay, I have $0.27 in my prison bank account, but I have no family members, no other outside parties who could help me meet bond. And that's one of the problems with- They qualified for IFP, didn't they? They did, Your Honor, and that's where I was going with my previous comment. They are similar, and the government's not going to stand here and say they're completely different. But there are important distinctions between IFP and a bond determination. Looking over the questionnaire for informal pauper status, there's no question on there that says, do you have an aunt, uncle, sister, brother, whoever, who could make your bond? There's no question to that effect, and that's a significant difference. And it goes to one of the purposes, I think, of bond, which is if I am released on a $5,000 bond that my sister puts up, theoretically, I'm going to be a lot less likely to breach that bond because my sister will be out the money. So there are important distinctions between IFP and a bond determination. Do you think the determination of whether a person can make bond, do you have to go into all the family holdings and that sort of thing? It's one of the considerate- I hesitate to go into to say things like holdings, Your Honor, but to at least ask the question. In this case, I think, and I want to make sure I get it right, Mr. Thann in the past had a bond, and it was- I'm sorry, it was Mr. Tran, had a bond in the past. He had met a $1,500 bond. Why couldn't he meet a similar bond again? And that's the type of thing that the reconsideration process encompasses. It's not simply, here's a $5,000 bond, take it or leave it. What happens then is the alien can come back to the agency and say, I have $0.27 in my prison bank account, can't do $5,000. The agency could say, well, do you have family members? You made a $1,500 bond before, and the alien could come back and say, look, my sister lost her $1,500 when I breached my bond, which is what happened, and I believe it was the sister, but the bond was breached, the money was lost. None of my family is going to give me a bond anymore. Okay. Then the agency can come back and perhaps negotiate some different requirements of the conditional release. Maybe the $5,000 bond becomes a $1,000 bond. Maybe it does go to a no bond, but then in part of that negotiation, the reporting requirement goes from once a month to twice a month. Maybe there's a geographic limitation. These bond requirements aren't set until the habeas petition is filed, right? They could be set before. In this case, they were not, Your Honor. But they could be set before that. Counsel, a separate issue. Do you agree that the defendant should not be Mr. DeMori, but should be Mr. Ashcroft or Ashcroft and Ridge? Your Honor, I believe that that – I wasn't as prepared to answer that question, but it was our position that it's the warden, not the – not Mr. Ashcroft. It's the warden that's the proper defendant, not the attorney general, or are they both proper defendants? Mr. DeMori is the regional director, isn't he? I believe that's right, Your Honor. And he – well, are you saying he should or should not be the proper party? It's been the position of our office, and I would want to verify that before I make a specific representation to the Court. And I think it was the Armintero case. I hope I'm pronouncing it right. The Armintero is implicated, yes. Yes, Your Honor. And I just – I would need to verify that before I make a representation to the Court. But all of these things come back to what the underlying purpose here is. The underlying purpose – and we'd urge the Court not to keep it in mind – is that these aliens have been ordered removed. They've been ordered deported. The only reason they're still here in the United States, presumably, is because the government of Vietnam won't take them back. Not much likelihood they'll ever go back for a long time, is it? Your Honor, we don't know that. And I think if you had asked a representative of the government of that 20 years ago, you'd get a different answer. And if you asked that question 15 years ago – but certainly there's been an amazing progression in the diplomatic relations between the United States and Vietnam. And I can't stand here on behalf of the United States and say that five years from now or two years from now that things are going to be exactly the same or they're going to be totally different. And that goes to why the United States government, under the Zavidas case, is not allowed to hold someone forever indefinitely. The Supreme Court said you can hold them for six months, but beyond that you can't. Correct, Your Honor. Are you proposing that the government be able to extend that six months for all of this bond processing? Not exactly, Your Honor. And what the Supreme Court said in Zavidas was – you're correct in assessing it – that six months is the reasonable period. But what they followed that up with immediately was you can release someone on a conditional basis. My question is can you use that bond determination process to extend the six months, and if you can, for how long? I think the answer to the first question is it's not meant – bond is not meant to continue as a lock on the door. It's meant as a condition of release. The actual timing of it, there is no requirement that the process start at five months and 29 days or four months, but it's presumed that in setting those conditions of release, things will happen in a timely manner. In these cases – But if they don't, it's okay? That's where habeas comes in, Your Honor, and that's where it did – in fact, the system worked to a degree in this case. It worked to the extent that habeas was the relief sought. Habeas is the proper avenue to go to, but only after the administrative remedies have been exhausted. And for some of the reasons I was talking about earlier, the district court didn't have all of the information that it should have had when it made its decision. As a result, this court doesn't have as complete a record as it should have in order to make a decision.  Thank you. Counsel, why don't we hear from the public defender and then you can reserve the rest of your time. Thank you, Your Honor. You know there's no rule that requires you to argue. That requires what? Requires you to argue. Ah. Or to consume all 20 minutes. Or to consume all 20 minutes. Point well taken. I will stay brief. Would you introduce yourself for the record, please? Thank you. Carolyn Wiggin from the Federal Defender's Office on behalf of Mr. Tran and Mr. Vo. Good morning. And I – the point is well taken. I think the mootness arguments are quite important here. And my opposing counsel spent a lot of time focusing on the fact that if this case is simply resolved as being moot, then in the future courts are going to rely on these district court decisions as precedent for the fact that detainees don't have to exhaust administrative remedies. But I think that if you look at Judge Beck's findings and recommendations in both cases, which were adopted by Judge Wenger, they're very specific to the procedural history of these two cases. In these cases, the – when the INS, and I'm going to just call them the INS because they were through most of this litigation in district court, did not issue its bond decisions in one case until approximately nine months after the person who was from Vietnam, a country which there's really very little dispute that as of now, deportation is not reasonably foreseeable. In one case, the bond decision didn't come out until about the ninth month of that person's detention. In the other case, it came out – Mr. Tran's case, it came out just before the six-month period had ended. And in both cases, they didn't come out until habeas petitions were filed. In both cases, in the – I believe the Tran case, Judge Beck did issue a 20-day stay to allow the parties to try to work out the bond question. And at the end of the 20 days, no decision had been made to lower the bond. The Petitioner, he looked at the IFP form and saw that the Petitioner had no real assets or cash. Who approves the bond if it's filled? Who approves? Does the court do it or is somebody in the Justice Department? My understanding is the bond is paid at the INS field office, and – Does it have to be a cash bond or is it something – From my experience, bail bond companies will not work with immigration bond. Part of it is when is it going to be fulfilled? There's – for a person ordered deported to Vietnam, there's no clear end date to that – to that period of time. It might never happen. So why are they going to put up all this cash that might never – there might never be an end point to that bond? So in my experience, people have to put up the entire amount themselves. It's just money that's put in the hands of the government to be held indefinitely? It's put – it's filed with the immigration – I guess the Department of Homeland Security at this point. My opposing counsel can probably speak more on what happens to it then, but I assume it's held in some kind of trust account. It's not like a regular court bond? No, it's not. Where a person signs for them or you can go on your own recognizance or anything like that? Well, I know in Federal court, you know, often what's put up is a house or a property. Or 10 percent or – Right, right. Or in State court, certainly 10 percent and then the bail bond company puts up the rest. Again, for the clients I've represented at the – at that level, the individual or their families had to put up the entire cash amount at an INS office. In this advisory opinion that the government would like us to write in this case or is asking us to write in this case, ordinarily to file a habeas – when you file a habeas petition, you must allege in the petition that you have exhausted administrative remedies, right? Certainly in the 2254 context of State prisoners. How would – is there any procedure where an individual in your client's circumstance in this case can go in and say I'm contemplating filing a habeas petition and I want to go through the bonding requirements before I do that so I've got a valid petition? Well, actually, that's a really excellent question. If you look at the CFR regulations regarding immigration detainees, I believe it's at the end of 90 days, so that first 90-day removal period, the district director for the local field office is supposed to conduct a file custody review. The petitioner doesn't do anything to trigger that. It's just – it's supposed to happen at the end of 90 days. In one of these cases, there is an indication that a file custody review was done, although it wasn't completed until after the six months, which is when the 5,000 bond was set. In the other case, there's nothing in the record to suggest that that district director-level review ever took place. After the – after six months have passed, I believe the regs say that jurisdiction passes to this headquarters detention office, HQPDU. And, again, automatically, they are supposed to make an assessment. If they decide to detain, they're supposed to come out and allow for a panel interview with two immigration officers. Neither client in this case was offered a panel interview. Neither client was given paperwork to fill out. Neither client in neither case was a reasoned decision offered for why a $5,000 bond was set. It was just – it was set. And the INS in the briefs makes a great deal of – talks about exhausting administrative remedies. I think it's terribly significant that in 2000, in that year, the Board of Immigration Appeals issued a decision stately saying, yes, we have jurisdiction of appeals from release decisions. Soon after that, the immigration rewrote its regulations to get rid of that administrative appeal. So now, in a letter, they've told our two clients, you can request reconsideration, but that's not written anywhere in any regulations. And the standards that they would use or the type of information they would provide is not stated in any regulation. And so, you know, on top of the fact that in 2241 cases, which these both were, there is no exhaustion requirement. In this particular area of law, how one would exhaust and what the administrative process really is, is really completely unclear. And what factors go into making a bond decision is completely unclear. So that is why I think, especially when someone has hit their six-month period, they, you know, can certainly – certainly if INS has offered them – is in the midst of a procedure, they're entitled to bring that to the district judge's attention. But in this case, Judge Beck looked at the overall procedural history of these cases and at the client's financial status and decided he was not going to stay the habeas to allow for this sort of vague procedure to take place, which is not stated in any regulations. And so I think the real question is, did Judge Beck and Judge Ranger, by adopting this opinion, abuse their discretion in deciding a stay wasn't warranted? And I think there's plenty in this record. And that that's what these cases are about, to warrant a conclusion that they did not abuse their discretion in deciding not to enter the stay. Well, in one case, they did enter a 20-day stay. In the other case, they didn't and just ordered, okay, it's been more than six months. Alito Was the 20-day stay sua sponte, or was that requested by the government? In one case but not the other. I believe the government requested it in both cases, but it was granted in the one case and not the other one was proceeding a bit later. It wasn't granted in that case because of what the magistrate judge saw before him as the evidence. From the standpoint of your client, would you prefer that we dismiss his mood or opine on the procedural processes as you have described it? From the standpoint of my client, I think dismissal as mood is the safest course. It's certainly the case as our vehicle to go further than that, but I think, you know, from the standpoint of Mr. Tran and Mr. Vo, the best outcome would be dismissal as mood. Anything further? Unless the Court has any further questions, I'll submit. Thank you. Mr. Goldman, you have some reserved time. Your Honor, subject to the Court's questions, the government has nothing further in rebuttal. I think I've answered all of your questions earlier. Thank you very much. Thank you, Your Honor. The case just argued will be submitted for decision, and the Court will adjourn.   Thank you.
judges: O'scannlain, Siler , Hawkins